UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETRONA TOMAS MANUEL, *et al.*,

                Petitioners,

    v.

LAURA HERMOSILLO, *et al.*,

                Respondents.

Case No. C25-2353-TL-MLP

REPORT AND RECOMMENDATION

Through counsel, Petitioners Petrona Tomas Manuel, Eduard Isai Martinez Gamez, Martha Dalila Escorcia Pineda, and Carlos Fabian Navarrete Acosta (together, "Petitioners") have filed a habeas petition pursuant to 28 U.S.C. § 2241.[1] (Dkt. # 1.) Petitioners are in the custody of U.S. Immigration Customs and Enforcement ("ICE") and detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (*See id.*) Petitioners allege that, having been released from immigration custody months or years earlier, their re-detention without notice or a hearing violates their Fifth Amendment rights to due process. (*See id.*, ¶¶ 2-4, 94-97.) Petitioners request as relief their immediate release from custody and an order enjoining their re-detention. (*Id.* at 20-21, ¶¶ 3-4.)

---

[1] Petitioner Maria Luisa Choello Ramos initially joined in the petition but has since accepted voluntary departure and withdrawn her claims. (*See* dkt. # 16 at 2.) Her claims are therefore DISMISSED.

REPORT AND RECOMMENDATION - 1

Respondents filed a return (dkt. # 14), and Petitioners have filed a traverse (dkt. # 16). Having considered the parties' submissions, the balance of the record, and the governing law, this Court recommends granting the petition for writ of habeas corpus (dkt. # 1), ordering Petitioners' immediate release from detention, and prohibiting Respondents from re-detaining them without a bond determination hearing before a neutral decisionmaker.

## I.   BACKGROUND

Petitioner Petrona Tomas Manuel, a citizen of Guatemala, entered the United States through the Mexican border in March 2024 at the age of 16. (Dkt. # 3, ¶¶ 1-2.) As an unaccompanied minor, she was immediately released from immigration detention and reunited with her father in Oregon. (*Id.*; dkt. # 8-1 at 2.) On October 28, 2025, she was detained by ICE in Oregon and eventually moved to the NWIPC. (Dkt. # 3, ¶¶ 6-9.) She has a master calendar hearing set for March 5, 2026. (Dkt. # 8-2 at 3.)

Petitioner Eduard Isai Martinez Gamez, a citizen of Honduras, entered the United States through the Mexican border in June 2023 at the age of 17. (Dkt. # 4, ¶¶ 1-2.) He was stopped by border patrol officials, designated an unaccompanied minor, and released to his older brother's care in Seattle in July 2023. (*Id.*, ¶ 2; dkt. # 8-3 at 2-4.) In March 2024, he received a notice to appear on April 2, 2026. (Dkt. # 8-4 at 2.) Through counsel, he has been preparing an application for special immigrant juvenile classification and has an immigration court hearing date of December 11, 2025, in Tacoma. (Dkt. # 4, ¶ 3; dkt. # 8-6 at 2.) On October 28, 2025, he was detained by ICE after law enforcement officials arrested his brother and was eventually moved to the NWIPC. (Dkt. # 4, ¶¶ 4-8.)

Petitioner Martha Dalila Escorcia Pineda, a citizen of Nicaragua, entered the United States in August 2021 to seek asylum from political persecution and was released after about a

week in immigration detention. (Dkt. # 5, ¶¶ 1-2.) She moved to Everett, Washington, around July 2023 and has attended annual ICE check-ins. (*Id.*, ¶ 4.) Through counsel, she filed for asylum and a work permit and received a work permit in April 2024. (*Id.*, ¶ 5; dkt. # 8-8 at 2; dkt. # 8-10 at 2.) At her check-in on October 3, 2025, she was detained by ICE and placed at the NWIPC. (Dkt. # 5, ¶¶ 8-9.)

Petitioner Carlos Fabian Navarrete Acosta, a citizen of Colombia, entered the United States through the Mexican border in January 2024 with his partner and child to seek asylum from political persecution. (Dkt. # 7, ¶¶ 1-2.) He was released on his own recognizance and given a notice to appear in Oregon, where he has family. (*Id.*, ¶ 2; dkt. # 8-15 at 2.) He applied for asylum and a work permit, received a work permit in May 2025, and attended annual ICE check-ins and master calendar hearings. (Dkt. # 7, ¶¶ 3-5; dkt. # 8-17 at 2.) His next check-in is scheduled for approximately September 2026. (Dkt. # 7, ¶ 5.) On November 4, 2025, he was detained by ICE and taken to the NWIPC. (*Id.*, ¶ 6.)

On November 21, 2025, Petitioners jointly filed their habeas petition. (Dkt. # 1.)

## II. DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if that custody violates "the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioners argue that their re-detention without a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution (dkt. # 1 at 16-20; dkt. # 16 at 3-4), which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V.

The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To comply with procedural due process, an individual must have "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022).

Respondents contend Petitioners are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) as "applicant[s] for admission." (Dkt. # 14 at 6.) Setting aside Respondents' statutory interpretation, which recent decisions of the Court have cast into doubt, the government must still comply with constitutional requirements. *See, e.g.*, *P.T. v. Hermosillo*, 2025 WL 3294988, at *2 n. 1 (W.D. Wash. Nov. 26, 2025) (rejecting government's argument that petitioner apprehended on arrival "falls within the mandatory detention scheme under 8 U.S.C. § 1225(b) simply because he has not been 'admitted' to the United States") (citing *Rodriguez v. Bostock*, __ F. Supp. 3d __, 2025 WL 2782499, at *5, 24 (W.D. Wash. Sep. 30, 2025) (rejecting government's argument that § 1225(b) applies to every applicant for admission)). "To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained." *Id.*; *see also Francois v. Wamsley*, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its [statutory]

authority has no [e]ffect on a claim contending that detention violates Constitutional Due Process.").

Respondents, while acknowledging that this and other district courts have recently held that due process requires a pre-deprivation hearing to determine if a non-citizen is a flight risk or danger to the community, disagree with those decisions. (Dkt. # 14 at 7 (citing *E.A. T.-B. v. Wamsley*, 2025 WL 2402130, at *5 (W.D. Wash. Aug. 19, 2025)).) Respondents offer no reason to depart from those decisions, and this Court declines to do so. This Court therefore evaluates Petitioners' due process claims using the *Mathews* three-part test, considering:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

### A. Petitioners Have a Considerable Private Interest in Their Freedom

Respondents recognize Petitioners' "weighty" liberty interests. (Dkt. # 14 at 7.) Petitioners' interests in not being detained are "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Respondents argue that non-citizens have "lesser" liberty interests than citizens. (Dkt. # 14 at 7.) Petitioners do not claim an interest equivalent to citizens', however, but maintain that the Constitution protects their interests in liberty by requiring due process before depriving them of it. (Dkt. # 16 at 4.)

"Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a non-citizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). Courts in this circuit

REPORT AND RECOMMENDATION - 5

have consistently found that the "government's subsequent release of [an] individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *See, e.g.*, *Calderon v. Kaiser*, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

When Petitioners were released from initial detention, they acquired liberty interests entitled to the protections of the Due Process Clause. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.") (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding a parolee had an interest in his continued liberty)). In reasonable reliance on these interests, Petitioners variously enrolled in school, applied for work permits, and applied for asylum. Accordingly, the first *Mathews* factor weighs strongly in Petitioners' favor.

### B. The Risk of Erroneous Deprivation of Liberty is High

Petitioners contend the second factor weighs in their favor because a hearing ensures that the purposes of detention—prevention of danger and flight risk—are properly served. (Dkt. # 1 at 18.) Respondents offer no counterargument. This Court finds that re-detaining Petitioners at this point without first reconsidering those factors poses a significant risk of an erroneous deprivation of their liberty interests in continued release. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high."). Accordingly, the second *Mathews* factor weighs strongly in Petitioners' favor.

### C. Respondents' Interest in Petitioner's Re-Detention is Minimal

Respondents have articulated no reasons for re-detaining Petitioners, who have no criminal history and have complied with ICE check-ins and proceedings. While providing Petitioners hearings before re-detaining them would require expending resources (money and time), those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See, e.g.*, *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). Accordingly, the third *Mathews* factor weighs in Petitioners' favor.

### III. CONCLUSION

For the foregoing reasons, this Court recommends granting Petitioners' habeas petition (dkt. # 1), ordering Petitioners' immediate release from detention, and prohibiting Respondents from re-detaining Petitioners without a bond determination hearing before a neutral decisionmaker. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit not later than **fourteen (14) days** from the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar **fourteen (14) days** from the date they are filed. Responses to objections may be filed by **the day before the noting date**. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 31, 2025**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Tana Lin.

Dated this 10th day of December, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8